IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| John Doe and Jane Doe, on behalf of their son, Johnnie Doe,<br><br>Plaintiffs,<br>v.<br><br>Richland County School District One,<br><br>Defendant. | C/A No. 3:25-cv-2365-JFA<br><br>**MEMORANDUM ORDER AND OPINION** |

This matter is currently before the Court on Defendant Richland County School District One's motion for summary judgment. (ECF No. 28). Within its motion, Defendant seeks to dismiss Plaintiffs' negligence and discrimination claims. This motion has been fully briefed, argued, and is ripe for review. For the reasons discussed below, the motion is granted.

## I. FACTUAL AND PROCEDURAL HISTORY

This action arises out of the education and accommodations Johnnie Doe, a minor with autism, received while enrolled in Defendant's schools. Specifically, Plaintiffs claim certain teachers and classroom aides at Greenview Elementary School mistreated their son, Johnnie, during his kindergarten (2022–23) and first grade (2023–24) years. Plaintiffs allege this mistreatment rises to the level of discrimination based on Johnnie's disability of autism.

Johnnie attended Greenview Elementary for his Pre-K year during the 2021–22 school year. Plaintiffs reported no major issues with the school that year. However, Plaintiffs aver a multitude of problems occurring over the next two school years.

2022–23: Kindergarten

Allene Dowdy served as Johnnie's kindergarten teacher with Mary Sellers helping as her Instructional Assistant.[1] Early that school year, Plaintiffs requested Johnnie receive special education services because of a medical diagnosis of autism. Defendant employs a system of interventions for students who are observed with either academic or behavioral difficulties in the classroom. Prior to a formal special education evaluation for Johnnie, school personnel met with Plaintiffs twice and created a plan to address their concerns through the Multi-Tiered System of Supports ("MTSS"). Johnnie's MTSS plan included the following accommodations:

- The special education teacher would continue to greet Johnnie in the morning. Johnnie would have the option to sit alone, if he liked.
- In the classroom, Dowdy would:
    - Use a visible timer
    - Give Johnnie two options as needed
    - Provide a visual scheduler with Velcro person for desk
    - Continue to follow up with the parents as needed on Class Dojo

The school implemented these accommodations and reevaluated Johnnie's progress after six weeks. Based on Plaintiffs' continued requests and concerns about Johnnie's autism during the first semester of that year, the school engaged in a formal special

[1] Mary Sellers was employed with Defendant as substitute teacher. Sellers did not receive specific training when she began substitute teaching, had not received training from Richland One during her time as a substitute, had not received training on Richland One policies, and had not received training on her role with students who have IEPs or 504 plans.

education evaluation. By February 14, 2023, a team of school staff met with Plaintiffs, determined that Johnnie was eligible for special education services, and developed an Individualized Education Plan ("IEP") pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400–1485.1. This IEP included the following accommodations for Johnnie: (1) visual cues; (2) daily classroom schedule; (3) preferential seating; and (4) multiple or frequent breaks. Though not a formal part of his IEP, the school allowed Johnnie to use headphones for his sensitivity to loud noises and to have a comfort item, such as a stuffed animal when appropriate. School personnel testified that accommodations were routinely shared with teachers and instructional assistants.

Shortly after the year began, Plaintiffs began lodging complaints about the school's treatment of Johnnie. Defendant avers that with each complaint, the school principal, Dr. Evans, investigated and addressed Plaintiffs' concerns. Nevertheless, Mrs. Doe's complaints eventually became a daily occurrence. It appears all these complaints were based on Johnnie's reports to his parents or came from a concealed recording device Plaintiffs hid on Johnnie's person or belongings.[2] Plaintiffs did not observe any of the alleged mistreatment firsthand. Johnnie has not been deposed in this matter and is not listed as a witness by either party.

Specifically, Plaintiffs aver Dowdy mistreated Johnnie in the following ways:

- Sending him to his desk during carpet time with the other children thereby isolating him from the class,

[2] None of these alleged recordings were introduced into evidence.

- Yelling at him;
- Taking recess from him;
- Withholding breaks as required by his IEP; and
- Excluding him from photographs of classmates during spirit week[3]

Plaintiffs further allege that another teacher, Fennell, took away Johnnie's noise-cancelling headphones and his stuffed animal on multiple occasions that year.

Defendant offers a competing version of Plaintiffs' complaints during the 2022–23 school year. Regarding the allegation about Dowdy "yelling," Dr. Evans testified that Plaintiffs' concern was more that Dowdy was loud and that Johnnie would get headaches from loud noises. Thus, Dr. Evans brought that to Dowdy's attention and asked her to be mindful of her volume. Regarding the complaints about recess and being excluded from activities or carpet time, Dr. Evans investigated and testified that when recess was withheld, it was withheld for the whole class. Moreover, Johnnie was allowed to participate in activities but would often choose not to participate.

Dowdy testified that if Johnnie complained of a headache, she would send him to the nurse or contact Plaintiffs. She would not take recess from him individually, but sometimes when it was raining or too cold outside, the entire class would not get recess. Dowdy avers that she allowed Johnnie to participate in carpet time, never disciplined him for not participating or sitting still, did not yell at him, and never refused him a break unless he had already had too many breaks that day. She allowed him his comfort animal until he

[3] Johnnie was excluded from spirit-week photographs on "tacky day." According to Dr. Evans, Dowdy stated Johnnie was not included because she did not realize his outfit was a tacky outfit.

began passing it around to other children, causing a distraction. Dowdy testified that Johnnie exhibited a number of behavioral issues such as refusing to work, hitting others, and talking back. She employed various techniques to assist Johnnie with managing his needs, including using positive praise, giving him rewards from the treasure chest, making him a "helper," and implementing a behavioral chart with stickers.

Plaintiffs testified that the yelling they were concerned about was mostly directed at the entire class and not specifically at Johnnie. They similarly testified that recess was taken from the whole class and not only from Johnnie. When they complained to Dr. Evans, Dr. Evans would talk to the teachers, but in Plaintiffs' opinion, the conduct—withholding of recess, yelling and other things—would improve for a period of time but then resume. By February or March 2023, things were going well with Dowdy, and she became, in Mrs. Doe's opinion, a decent teacher. Dr. Evans testified that both Dowdy and Fennell were meeting Johnnie's educational needs.

<u>2023–24: First Grade</u>

During his first-grade year, Johnnie's initial teacher was Claudette Fennell, a long-term substitute filling in for the full-time teacher who was on maternity leave.[4] Arlene Dyckes served as the Instructional Assistant.[5] At the beginning of the school year, Johnnie's 2022–23 IEP remained in place. Plaintiffs continued to have the same concerns

[4] Fennell was employed by Defendant as an instructional assistant and served as a long-term substitute until Ms. Coleman came back from leave in October.

[5] Dyckes received only initial substitute teacher training when she began working for Defendant around 2000; had not taken additional district training since that time; and had not received training related to special education students, autism, or student bullying/harassment.

regarding mistreatment of Johnnie in his first-grade year. The complaints include Fennell and Dyckes excluding Johnnie from carpet time, not allowing him breaks per his IEP, not giving him snacks, reprimanding him for fidgeting, and not allowing him access to his comfort item. Plaintiffs also allege that Johnnie's food was thrown away in the cafeteria once and that a cafeteria worker grabbed him by his arm and pulled him to the back of the line, hurting him. Here again, Plaintiffs' allegations rely on Johnnie's statements and not Plaintiffs' firsthand knowledge. When brought to her attention, Dr. Evans would investigate these complaints and report back to Mr. Doe.

On February 8, 2024, the IEP team met and expanded Johnnie's accommodations to include extended time to complete assignments and tests, chunking (or breaking down) assignments, using a graphic organizer, and using small group settings for his quizzes and tests. Also, in addition to yearly professional development training provided to all teachers on special education requirements, Dr. Evans—in response to Plaintiffs' concerns—facilitated additional training focused on autism for staff who worked with Johnnie.

Again, Dr. Evans investigated Plaintiffs' complaints that Johnnie was not getting his IEP accommodations and determined that Fennell was indeed providing necessary accommodations, including preferential seating, frequent breaks, and extended time to complete assignments. Fennell likewise testified that she provided Johnnie's accommodations.

Defendant again has a differing version of events as to Plaintiffs' specific complaints. Regarding the allegation that Fennell yelled at Johnnie, the only instance Dr. Evans recalled was a time in the cafeteria when Fennell yelled at him because he was hitting

another child with his stuffed animal. Regarding other staff yelling in the cafeteria, Plaintiffs' concern was about yelling in general at all students, and Dr. Evans addressed that but testified that it was not typically directed at Johnnie and not because of his disability.[6] Regarding Plaintiffs' concern that staff would not allow Johnnie his noise-cancelling headphones, Dr. Evans testified that Johnnie did not want to wear them. Fennell testified that she always allowed him to use them and allowed him his stuffed animal unless it was causing a distraction. Regarding the allegation that Johnnie was not given a snack, Dr. Evans investigated and learned that Johnnie did not want the snack that was available. Fennell testified that she never denied him a snack. Regarding the allegation that Johnnie's food was thrown away in the cafeteria, Dr. Evans reviewed video and saw that Johnnie's food was not thrown away but another child's food was. Fennell confirmed this in her deposition. Fennell testified that she never excluded Johnnie from class activities. During class visits, Dr. Evans observed that Johnnie would often choose not to participate in class activities because he did not want to; if recess was being withheld, the whole class was denied recess, not Johnnie alone. Dr. Evans reminded the teacher that recess was required.

Fennell testified that she would sometimes threaten the whole class that they would not get recess if students were acting up to try to get them to behave, but she never followed through. Dr. Evans observed the classroom frequently and testified that Johnnie often refused to complete assignments. However, she never observed him being punished for not completing or doing assignments; she would encourage him to do the work or take him for

[6] At some point Fennell received formal discipline for yelling at students.

a walk to have a break or call home. Dr. Evans also observed Johnnie make statements about being touched or hurt when she could see that no one was touching him and discussed this issue with Plaintiffs. Sellers also observed such behavior and testified that she observed him accuse a student of pushing him when he actually tripped over a chair. Dowdy and Dyckes also observed this kind of behavior by Johnnie.

Additionally, Plaintiffs contend that Defendant's delay in conducting Johnnie's initial IEP evaluation was willful and is therefore an additional basis for their claim of discrimination.[7] However, Mrs. Doe specifically testified that the delay did not lead to any mistreatment by staff.

In response to the above conduct, Plaintiffs brought this suit alleging three causes of action: (1) a state law claim of gross negligence, (2) a federal claim of disability discrimination in violation of the ADA, and (3) a federal claim of disability discrimination in violation of § 504 of the Rehabilitation Act of 1973.

## II. LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is "genuine" if

---

[7] Despite the request for an IEP evaluation in August 2022, Defendant did not perform a formal special education evaluation and develop an IEP for Johnnie until February 14, 2023.

sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248–49.

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets that burden and a properly supported motion is before the court, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 323. All inferences must be viewed in a light most favorable to the non-moving party, but the non-moving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

## III. ANALYSIS

Within its motion, Defendant seek summary judgment as to each of Plaintiffs' three claims.

<u>ADA and § 504 Claims</u>

Plaintiffs initially assert claims of discrimination pursuant to the ADA and § 504 of the Rehabilitation Act. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, § 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, or be denied the benefits of, or be subjected to discrimination under any program or activity

receiving Federal financial assistance." 29 U.S.C. § 794(a). Because of the similarities in both the text and the purposes of these two statutes, they "generally are construed to impose the same requirements." *Baird v. Rose*, 192 F.3d 462, 468 (4th Cir. 1999). Accordingly, to prove a violation of either the ADA or § 504, a plaintiff must establish that (1) he has a disability, (2) he is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) he was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of his disability. *Constantine v. Rectors & Visitors of George Mason Univ.,* 411 F.3d 474, 498 (4th Cir. 2005) (citing *Baird*, 192 F.3d at 467–70; *Doe v. Univ. of Md. Med. Sys. Corp*., 50 F.3d 1261, 1264–65 & n.9 (4th Cir. 1995)).

Although "[t]he ADA and Rehabilitation Act generally are construed to impose the same requirements due to the similarity of the language of the two acts," a violation of the ADA requires that an individual's disability be "a motivating factor" in the adverse action; whereas, § 504 requires that the disability be the sole reason for the adverse action. *Baird* at 468-70. "To prove discrimination in the education context, something more than mere failure to provide the free appropriate education required by IDEA must be shown." *Sellers by Sellers v. Sch. Bd. of City of Mannassas, Va*., 141 F.3d 524, 529 (4th Cir. 1998).

The appropriate standard for ADA and § 504 claims brought by parents of schoolchildren related to their children's education is deliberate indifference. *A. J. T. v. Osseo Area Schools, Independent School District No. 279*, 605 U.S. 335, 344–45 (2025), (rejecting a heightened "bad faith and gross misjudgment" standard and holding "that ADA

and Rehabilitation Act claims based on educational services should be subject to the same standards that apply in other disability discrimination contexts").

To meet the deliberate-indifference standard in the ADA context, a plaintiff must show (1) a violation or substantially likely violation of the ADA, (2) knowledge of a substantial risk of the deprivation of those rights, and (3) a failure to act to address the risk. *Koon v. North Carolina,* 50 F.4th 398, 405 (4th Cir. 2022). "If there wasn't any ADA violation (or any substantially likely ADA violation), there was nothing to be deliberately indifferent about." *Id.* 50 F.4th 398. As further explained by the Fourth Circuit:

> Simple failure to comply with the law is not deliberate indifference. It is not enough simply to point to what could or should have been done. That is the language of negligence. Deliberate indifference requires a "deliberate or conscious choice" to ignore something. That is more like criminal-law recklessness than mere negligence. An official must know of the dangers to federal rights and nonetheless disregard them. The official must know of the facts from which a federal-rights violation could be inferred and then actually draw the damning inference.

*Id.* at 406-07 (cleaned up).

For purposes of summary judgment, Defendant does not contest that Johnnie has a disability and was qualified to receive public education services. Nevertheless, Defendant avers Plaintiffs failed to offer evidence showing Johnnie was excluded from participation in or denied the benefits of a public educational service, program, or activity or was otherwise discriminated against, on the basis of his disability. Accordingly, Defendant argues that Plaintiffs cannot establish an ADA or § 504 violation, let alone deliberate indifference.

As an initial matter, Defendant avers that Plaintiffs should not be allowed to support any claim with reports from Johnnie as his statements are inadmissible hearsay. Johnnie was never deposed. Because Plaintiffs lack firsthand knowledge of all in-classroom activities, they are unable to produce sufficient evidence to support any claims of discrimination. Plaintiffs failed to respond to Defendant's assertion that Johnnie's statements were inadmissible hearsay. Accordingly, this Court ordered additional briefing on the issue. (ECF No. 48). In response, Plaintiffs admit that Johnnie's statements are inadmissible hearsay. As explained below, this is fatal to Plaintiffs' claims.

Defendant further argues that Plaintiffs failed to show any of the complained of activities amount to a denial of benefits of a public educational service or program or would otherwise rise to the level of discrimination. Plaintiffs complain that Johnnie was excluded from a class picture and not given adequate breaks. They aver he was yelled at and not provided his headphones or comfort toy on occasion. Defendant avers that Plaintiffs have no evidence to support such allegations.

Moreover, Defendant avers that there is no evidence Johnnie was treated differently than non-disabled students or that any of the staff conduct regarding Johnnie was motivated by his disability. Defendant specifically points out that Plaintiffs' concerns of yelling were that the instructors yelled at the entire class. Similarly, recess was sometimes withheld from the entire class. Accordingly, Plaintiffs have not shown that Johnnie's disability was either a motivating factor or the but-for cause of the alleged mistreatment.

Defendant further avers that if Plaintiffs complaints constitute a violation, Plaintiffs cannot show that the Defendant acted with deliberate indifference. As noted above, it is

not enough simply to point out what could or should have been done. Deliberate indifference requires a "deliberate or conscious choice" to ignore something. An official must know of the dangers to federal rights and nonetheless disregard them. Defendant points to the multiple meetings and the implementation of Johnnie's IEP as evidence that school instructors continually provided an appropriate educational experience for Johnnie and, thus, could not have been deliberately indifferent to his needs.

In response, Plaintiffs aver that various employees' actions must be viewed collectively. When taken together, Plaintiffs assert they have presented evidence of a pattern of deliberate indifference to Johnnie's needs. Plaintiffs string together repeated complaints about teacher volume, Johnnie's exclusion from recess and class activities, and pointed discipline to show that Johnnie was mistreated. Plaintiffs then emphasize that the school was well aware of Plaintiffs' concerns yet offered no training or aid to the various instructors Johnnie encountered throughout his kindergarten and first grade year.

The main issue with Plaintiffs' position is that without testimony from Johnnie or some other admissible evidence, Plaintiffs have failed to provide evidence of any adverse actions taken against Johnnie. More importantly, they have completely failed to show how any of the alleged actions were prompted by discriminatory intent. Accordingly, Defendant is entitled to summary judgment.

Plaintiffs offer several arguments to combat the grant of summary judgment notwithstanding Johnnie's inadmissible hearsay. None are availing.

First, Plaintiffs aver that Defendant's own evidence creates genuine issues of material fact. Plaintiffs initially reference Defendant's use of the MTSS process prior to

establishing a formal IEP. As Plaintiffs would have it, the delay in implementing an IEP is itself evidence of discrimination under the ADA and § 504. The Court disagrees. Mrs. Doe specifically testified that the delay did not lead to any mistreatment by staff. (ECF No. 28-5, p. 31). Moreover, the evidence in the record shows that staff worked diligently to meet Johnnie's needs by implementing an MTSS immediately upon Plaintiffs' request. This MTSS included several accommodations which were later implemented in Johnnie's IEP. Additionally, Plaintiffs have failed to show any delay was prompted by discriminatory intent. Plaintiffs have the burden to show that any deprivation was caused by autism-related discrimination. Here, Plaintiffs have cited only to the delay itself as evidence. There is no indication this delay was caused by discriminatory intent. In fact, the record indicates that Defendant attempted to accommodate Johnnie immediately by implementing an MTSS. In asserting this argument, "Plaintiffs recognize that an IDEA procedural violation does not automatically establish ADA or Section 504 discrimination." (ECF No. 49, p. 2). Because Plaintiffs have failed to show any sort of discriminatory intent, they have failed to show how any delay in implementing a formal IEP prevents the grant of summary judgment.

Next, Plaintiffs aver that Defendant failed to adequately train or inform personnel responsible for implementing Johnnie's accommodations. Assuming that Plaintiffs are correct, they have still failed to set forth any admissible evidence showing Johnnie's IEP was not properly implemented or that Johnnie failed to receive accommodations because of his autism. Again, Johnnie's allegations are not admissible, and Plaintiffs have no firsthand knowledge of the alleged mistreatment. Plaintiffs offer no admissible evidence

that points to a lack of training without first identifying some sort of violation. Accordingly, this argument likewise misses the mark.

Plaintiffs next aver that Defendant employees acknowledged restrictions on accommodations and limited educational participation. Specifically, Plaintiffs point to testimony wherein Johnnie's walking breaks were limited. Assuming that Johnnie's breaks were actually limited, Plaintiffs have still failed to show that any such restriction was caused by Johnnie's autism. In fact, the only evidence in the record shows that Johnnie's breaks were limited because he had already taken several breaks or had academic work to complete. Nothing in the record shows Defendant employees limited Johnnie's IEP accommodations because of his autism. Plaintiffs acknowledge that "a failure to implement an IEP does not automatically establish discrimination" and further "recognize Section 504's distinct requirement that the challenged denial be solely by reason of disability." (ECF No. 49, p. 5). Here, Plaintiffs have failed to evidence anything other than the possible failure to implement each and every IEP accommodation to their satisfaction. However, they have failed to show how any of the alleged deprivations were motivated in whole or in part by discriminatory intent or otherwise caused by deliberate indifference.

Plaintiffs finally point to email communications that contain hearsay but are "offered to demonstrate its effect on the recipient." (ECF No. 49, p. 6). Plaintiffs thus argue that they do not offer Jane Doe's emails to establish that every reported incident occurred. Rather, they demonstrate when Defendant received notice of concerns involving Johnnie's disability, accommodations, treatment, and educational participation. Plaintiffs assert that Mrs. Doe's numerous emails put the school on notice that Johnnie had a disability and

requested special accommodation. "These admissions corroborate that administrators knew of concerns involving Johnnie's educational environment. The district's subsequent responses, including meetings, interventions, and training, are relevant but do not conclusively resolve deliberate indifference." (ECF No. 49, p. 7). Here again, even if the Court were to agree with Plaintiffs' position that some of Mrs. Doe's emails were admissible to show notice, Plaintiffs have still failed to show any failure to accommodate caused by discriminatory intent or that rises to the level of deliberate indifference.

Plaintiffs acknowledge that inadequate training or negligence alone does not establish deliberate indifference. However, Plaintiffs aver Defendant's repeated notice, coupled with testimony that staff lacked knowledge of accommodations and that Johnnie continued experiencing limitations in classroom participation, supports an inference that Defendant knew of a substantial risk to his disability-related rights but failed to adequately address it. Plaintiffs thus aver that whether Defendant's responses were sufficient remains a disputed question. Plaintiffs are correct that they dispute this question. However, they have failed to support their position with admissible evidence to create a genuine issue of material fact. Plaintiffs have not shown that Johnnie's disability was either a motivating factor or the but-for cause of the alleged mistreatment. Without evidence that Johnnie was denied or excluded from services because of his disability, Plaintiffs cannot make out an ADA or § 504 violation.

At bottom, the record fails to provide evidence of the alleged mistreatment or failed IEP accommodations Johnnie complains about. Nevertheless, Plaintiffs urge the court to compound several inferences to arrive at the conclusion that numerous employees

discriminated against Johnnie because he had autism. All inferences must be viewed in a light most favorable to the non-moving party, but the non-moving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Here, the court would be required to speculate as to whether Plaintiffs' complaints actually occurred and further speculate that a lack of training combined with consistent email complaints evidence discrimination. This is simply a step too far. Accordingly, summary judgment as to Plaintiffs' ADA and § 504 claims is appropriate.

<u>Gross Negligence</u>

Defendant next challenges Plaintiffs' gross negligence claim. The South Carolina Tort Claims Act provides the exclusive remedy in tort against Defendant. S.C. Code Ann. §§ 15-78-20(b), -30(d), -30(h). The SCTCA is a limited waiver of sovereign immunity. However, there are numerous exceptions to the wavier. Relevant here, S.C. Code Ann. §15-78-60(25), provides that a governmental entity is not liable for a loss resulting from the entity's exercise of a "responsibility or duty including but not limited to supervision, protection, control, confinement, or custody of any student . . . *except when the responsibility or duty is exercised in a grossly negligent manner*." (emphasis added). Thus, in order to make their case, Plaintiffs must prove gross negligence, rather than simple negligence.

Gross negligence has been defined as "the intentional, conscious failure to do something which it is incumbent upon one to do or the doing of a thing intentionally that one ought not to do." *Etheredge v. Richland Sch. Dist. One*, 341 S.C. 307, 310 (2000);

*Clyburn v. Sumter County District Seventeen,* 317 S.C. 50 (1994). It is a failure to exercise even slight care. *Id*.

Here, it appears that Defendant exercised at least slight care. The uncontested record shows:

- The school implemented accommodations for Johnnie at the beginning of Kindergarten through the MTSS process;
- Additional accommodations were adopted and implemented when his IEP was developed halfway through his Kindergarten year in February 2023;
- During first grade, after an annual review, his IEP accommodations were expanded;
- Dr. Evans allowed additional non-IEP accommodations for Johnnie to use noise cancellation headphones and a comfort animal;
- Dr. Evans frequently communicated with the parents and responded to or investigated their concerns regarding accommodations, recess, snacks, and teacher conduct or yelling;
- Teachers used a variety of methods to deal with his behavioral issues including giving him rewards, using a behavior chart with stickers, not forcing him to do work; and
- The District held annual professional development for teachers covering special education topics and the school held a special mid-year training session on Autism Spectrum Disorder for staff who worked with Johnnie.

It is clear that Plaintiffs believe more could have been done or accommodations could have been implemented in a more satisfactory fashion. However, Defendant's thorough and consistent efforts to accommodate Johnnie's needs show the existence of at least slight care. *Etheredge v. Richland Sch. Dist. One*, 341 S.C. 307, 312 (2000)("Further,

the fact that the School District might have done more does not negate the fact that it exercised 'slight care.'"). Accordingly, summary judgment must be granted as to Plaintiffs' gross negligence claims.

Given the above determination, the Court declines to address Defendant's additional argument that Plaintiffs should not be able to recover for pure emotional or mental suffering.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment (ECF No. 28) is granted as to all claims.

IT IS SO ORDERED.

November 24, 2026
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge